RE KORB, DOUGLAS AND OLIVERA, PATENT OFFICE, 2010-10-30 We'll hear from Mr. Reiner when you're ready. May it please the Court, I'm Kevin Reiner, representing the inventors in this patent application, William Korb, Brian Douglas, and Marcel Oliveira. In upholding the examiner's rejection of the claims on appeal as obvious, the Board made several errors of both law and fact. The Board failed to properly construe the claims such that the preamble, utility knife blade, that language, is a limitation on the claims. It improperly relied on the cited references that were relied on by the Board. And further, the Board misinterpreted the scope and content of those references and erroneously concluded that the claims were obvious. Starting with the claim construction, preambles of every claim on appeal here recite the language, utility knife blade. That's a particular type of blade, not a generic blade, as is known in the art. Now, there's really no dispute here about what a utility knife is. It's a handheld knife with a small, sharp, retractable blade. And the Board agreed with that. If you look at the Board's decision... But isn't the word utility simply a statement of use? Not in this case. It's a knife blade consistently for first edge, et cetera, first and second metal portions. As understood in this art, a utility knife blade is a type of blade. And this is made clear in the applicant's application itself. If you look at the background section of the application, which is on page 835 in the appendix, it starts out talking about a conventional utility knife blade. And the application goes on for about two pages discussing what a utility knife blade is, how they're manufactured, and some of the features of it. The applicants then go on to distinguish utility knife blades from other types of blades. And they talk about there are laminated blades, and there are razor blades, and there are bandsaw blades. And that these are different types of blades from utility knife blades. And one of our skill in the art would understand that these are specific type of blades. Regardless, if a utility knife blade is to be used with a utility knife, as the Board agrees that it would be, and that a utility knife is a small, is a handheld knife with a small, sharp, retractable blade, it naturally requires that the utility knife blade has certain features of it. Well, actually, the hardness features of the two portions are exactly within the disclosure of Anderson. Yes, that's true. Pretty close. I'm sorry? Pretty close. Well, there's two points on that. The first is that, directly addressing your comment there, is that in this case, it was thought at the time of the invention that you could not apply the materials of Anderson to utility knife blades. And it goes beyond just the harnesses, because the claims also refer to the type of material we're talking about. Was that supported in the record by a declaration of an expert? I'm sorry? Was that supported during the prosecution by a declaration of an expert? That wasn't relied on during the prosecution of this matter. However, if you look at the application itself, it does discuss the difficulties, what were believed to be the difficulties in applying the materials and technology of Anderson to the utility knife blades. It specifically talks about bandsaw blades such as Anderson in that it says, it goes on from 837 to 838 in the appendix, and it talks about, although bimetal bandsaw blades have been in use for 30 years, I'm paraphrasing somewhat, it said it goes on to believe there are numerous obstacles preventing the application of that technology to the manufacturer of utility knife blades. And it goes on to say how it was believed at the time that you could not manufacture utility knife blades using that technology. And if you could not, we submit, Your Honor, that if it could not be manufactured, that's the definition of lack of obviousness due to there's no expectation of success, so you couldn't make it. Now, we submit that this is a classic case of when a preamble does add limitation to the claim because it meets many of the guideposts that this court has put forth as being a limitation. First, throughout the specification, the inventors continue to- during prosecution sought to distinguish, saying that I have a utility knife, sought to distinguish over the Chinese reference and Anderson that way. Yeah, that's a very strong argument is the reliance here by the applicant because all throughout prosecution, they said in order to distinguish over a product that was cited against it- Let me ask you though, assuming for the moment that one does view the preamble as a limitation here, does that get you home though? I mean, isn't there still a strong case for saying that this was analogous art, the other two, the two references, the Chinese 509, CN 509, and the Anderson patent? Well, to say that, we submit it's not analogous art because it's- there are different types of knives. The Anderson reference is a metal cutting bandsaw blade. But if you look at the problem to be solved, wasn't the difficulty in that sense, wasn't the problem to be solved that the applicant is seeking to solve here, the breaking, and that was also an issue in connection with the Chinese reference, wasn't it? The Chinese reference, I would submit that that's sort of an overgeneralization of the problem here. With respect to the Chinese reference, it's a very different type of blade than a utility knife blade. The reference itself is pretty silent as to what it is and its characteristics. Other than that, it's got a body and a blade that's welded to it, and it's cut plastic. But the evidence of record, and it's the only affirmative evidence there, these other patents that were cited and discussed- You're saying in fact it's a circular blade? I'm sorry? You're saying in fact the Chinese reference is part of a circular blade? Yes, it's- and I- yes, it's not part of a circular blade, but it's mounted in a large circular machine. Oh, I see. Okay. Which is very large, and it has- it almost looks like a turbine there. Yes. And these are the blades that are mounted. It looks like a jet- almost a jet engine turbine. And these blades spin around, and they have to be very rigid and stiff in order to function. So that's just a very different type of blade than a utility knife blade. And you wouldn't apply that technology to it because of that difference. It's too different to be analogous art. And that's one of the- Well, but that's- that's the- I mean, you say, well, as if that was universal truth, that it's just too different to be analogous art. But that's the question. And the question is, well, why is- what is it about the differences between the two prior references and the utility knife blade that makes it not analogous art? I mean, the pellet cutting blade, for example, strikes me that you could argue that there's not much difference other than size with respect to that. Well, the Chinese reference here, that blade, is very thick and rigid. And I'll go back to what's talked about in the background section of the application about manufacturing a utility knife blade. And if you have this very thick, rigid blade, you could not turn that into a utility knife blade. You couldn't apply that technology to it. Why wouldn't all blades- excuse me. Go ahead. Why wouldn't all blades be analogous art? Here, because- We're talking about blades. Right. Right.  Yeah, because what was- those in the art understood that these different- these blades had very different characteristics and had different means of manufacture. And it was thought as discussed in the background- this is really the only evidence here about how the prior art can or cannot be applied to utility knife blades. And it was believed that you could not use that technology to manufacture a utility. You couldn't manufacture the blade. And if you can't manufacture the claimed invention, it can't be obvious over the prior art. But it goes beyond that is because with these different structures could not be combined. Go ahead. Go ahead. Okay. Finish your thought. With Anderson, Anderson necessarily- these bandsaw blades, they're a circular loop. They're driven by a power motor. They have to have a certain flexibility and springiness in order to bend to go around in a circle. And they also have to be very tough in order to withstand the cutting forces when you're driving a power machine to cut metal. If you did hear what the examiner did, which was to simply say, well, I would take the blade of the CN-509 and I would use the materials of Anderson, well, that would render- that would make the Chinese blade to be this flexible blade that could bend 180 degrees. And that wouldn't work. So one would never seek to do that, to modify the art in a way that would make the stiff, rigid blade flexible and wouldn't work. Do you know what- you know what an X-Acto knife is, surely, right? Yes. Right. It's essentially a pencil-shaped device with a small blade at the top of it. Do you think that this patent or this application, if issued as a patent, would read on an X-Acto knife with the exact same blade construction? Well, I think that an X-Acto knife, it'd be questionable whether it would be configured to be retractable into a utility knife. And that's one of the characteristics that would- X-Acto knives are not retractable, at least the set that I have. And I assume that's pretty common. But would that, you think, defeat an argument that this patent would read on that blade? Because I would have assumed that the blade used on an X-Acto knife is a utility knife blade. Sure has all the shape and feature and so forth. Well, there's two points I'd like to make on that. The first is that I think one of our skilled art, again, knows what a utility knife blade is. And I think an X-Acto knife might fall outside of that. In what respect? Why? Well, in respect because, again, a utility knife blade is a particular type of blade. It's different from a razor blade. It's different from an X-Acto knife. Why? Why? Because it's the name of a type of blade. It's a particular name that's describing the product. And moreover, the X-Acto knife does not even meet the body of the claim because that requires a back edge and a front edge and two side edges. And that's not present there. And those are the characteristics in the invention that are specifically set forth in the claim. A back edge, a front edge, and two side edges of the blade? Of the blade. Oh, that's utility. I mean, X-Acto knife blades have that. Well, they might have a different configuration. I believe they're more triangular in shape. And they're very pointed at the end, and they might not function as utility knife blade. We're well into your rebuttal. Would you like to save it or continue? Yes, thank you. Take a look. I take it that the Patent Office doesn't consider this invention to be on the cutting edge of technology. No, Your Honor. We don't. It's obvious the board correctly found so. What came up during the opening about no declaration is quite apt for appellant's argument that CN-509, that one-page disclosure which has no restriction as to size and just shows soft metal welded to hard cutting metal on page 731 in the figure on 730 of the record, the board put applicant on notice in its decision that during the prosecution he submitted no evidence, no declaration that that one-page disclosure with its drawing that closely resembles the claim here is negated or somehow too big or something else like with other patents to be connected to it. The board said, you know, we've considered your argument. It's just attorney argument. You haven't submitted any evidence that the one-page disclosure. Let me ask you if I could. The panel spent considerable time discussing Mr. Reiner whether the preamble was a limitation of the claim and we're talking about the term utility blade. Does the government's case stand or fall on that point? I mean, assume for the moment one were to conclude that the preamble utility knife is a limitation of the claim. Where does that leave the government? Well, then that would not be the board's rationale and claim construction. And frankly, we would have to know what specific structure was being added to really understand if this hypothetical structure, say, distinguished it from CN 509 and Anderson soft metal welded to hard cutting metal. The board performed a very thorough, nice two-step analysis in following this court's case law, Catalina Marketing, that you look to the body of the claim for specificity first. And in this claim, there's much specificity of structure, all four edges, first metal with a range that's very precise, a second metal with a range that's very precise, and then welding. And then under Catalina Marketing, you look backwards and what's in the preamble are just two words that applicant has been setting for the structure. Assume for the moment that one viewed the preamble as a limitation. Would you abandon your argument then that CN 509 and Anderson don't render it obvious? No, Your Honor, because, no, thank you. That's what I'm trying to get at. Let's say the court were to conclude that, as a matter of claim construction, that the preamble is a limitation of the claim. Can you still prevail on appeal? Well, Your Honor. If so, why? Because the board, in first deciding merely a statement of intended use, and then in addressing applicant's submitted definition for what a utility knife is, and that's the best the board could go with, small, sharp, retractable, then the board did, I think, what Your Honor is getting at, an analysis that given applicant's presentation of what the claim construction should be or is, the board said on page 14 of its decision, page 15 of the record, that CN 509 could be made any size. The reference does not have a limitation as to size, and applicant has not submitted any evidence, such as declaration, to reduce it. So CN 509 could be made any size, even if small, is inherently or in the preamble, and it's retractable because of the holes. So you're saying that even if this is viewed as being limited to utility blade, the claim, you would still say that... It does not impart patentability, Your Honor, because of the cited references. Yes. You're saying the reference is still rendered obvious. Absolutely, Your Honor. Do you think all... To pick up on Judge Lurie's question, directed to Mr. Reiner, do you think all blades would be analogous art? If this were in a razor blade... Many blades are analogous art for sure, Your Honor. The two problems... I guess a razor blade is probably closer than the two prior art references. It probably concerned the two problems facing this inventor, wear or break. That's throughout the specification. Wear at the cutting edge, break in the middle because it's too hard and would get brittle. So you do soft, then hard. Things of that sort, such as CN 509 and Anderson, which teach both of those aspects that you would have a more durable and better cutting blade by having it harder at the edge and softer in the middle. So those two squarely face the same problems that this applicant said was the problem he was addressing. Let me ask you another question, which again is provoked by Mr. Reiner's argument, and I wanted to get your reaction to it. Mr. Reiner relies in part on the application discussion of the technological difficulties of moving from the Anderson-type blade. I think it was Anderson that was being distinguished to the claimed utility blade. Now, suppose that a solution to the technological problem were found, whether by this inventor or someone else, that enabled the utility blade to be made. Would that impart patentability to a claim to a utility blade, which has the same structure as the prior art blade? In other words, what I'm asking is, where the claim is not to the method of constructing the utility blade, but rather is to the utility blade, which could not, let's say 10 years earlier, have been made, but has been enabled to be made by non-claimed technology. Does the utility blade now become patentable by virtue of that non-claimed technology? Do you understand the question? Yes, I think so, Your Honor. No, it would not be patentable because CN-509, and if I'm not answering your question, then I guess I'll get a follow-up. It wasn't a very clear question. CN-509 is a short yet spot-on disclosure with soft metal welded to hard cutting metal and has holes for retractability. Anderson only provides, like, range examples that this is specificity for Anderson. On page 120 of the record in column four, Anderson says 44 to 45 Rockwell C for my soft metal. I understand. But if the applicant had said, you know, there's Anderson out there, and we would love to make Anderson's composition fit into a utility knife blade or something of that size, but it has not been possible to do that before. But you know what? We've devised a method to do it. You might be able to get a patent for that. I mean, let's assume that he would. But does one then, can one then take advantage of the fact that some, whether this inventor or some other inventor, has an unclaimed method for producing the new device, does that give the new device, the apparatus itself, patentable, does that make it patentable subject matter? I believe not, your honor, and here's why. Because all we have in the two references are structures that have been relied on. It's kind of putting them together, and all that's claimed is a structure. And under the law of obviousness, you look at the claim, what's the structure, and you find, you know, pertinent references and what they teach. Even anticipation. Are you saying old is old, irrespective of enablement? Well, yes, your honor, that these two references disclose teachings that are very close to this broad claim. I think the answer most likely is, your honor, that this claim is very broad. It has structure for soft metal welded to hard cutting metal, and maybe has an attribute as to size, and the board considered that. The board said CN-509 is not, excuse me, is not restricted as to size. And you didn't submit any evidence to show that this, and I think, again, the key is that CN-509 is just a very broad general reference, which somebody skilled in the art, people in this art of making blades are skilled. They would look at this reference and say, wow, common metallic, welded to tungsten steel, and I avoid breaking and wear, and I could put holes in it, and that can lend to retractability. A person who's skilled in the art, and these people are, you know, what would that person glean from just this one page reference would be almost everything you needed for claim one. Claim one is very broad. Then Anderson supplies just on the structure, well, when you put soft metal welded to hard metal, use these types of ranges, and so does CN-509. It says in the art it was known to use 45 Rockwell steel, which is smack dab in the middle of his first range. And then you have a second range, which Anderson provides. So I didn't see any technical difficulty for this claim to a broad structure, making it from the prior art. I think these things about methods kind of confuse what is claimed. Well, except that if you accept, I was really asking a question based on Judge Schultz's hypothetical, his assumption that for purposes of argument, the utility blade is treated as a limitation. Now, once you do that, then you have the issue of whether going from a large blade to a small blade creates manufacturing difficulties. But you say it's still, that's irrelevant. Correct, Your Honor. The manufacturing difficulties have not been testified to in the record by way of evidence. It's mere attorney argument because these disclosures are really broad and would teach to a person skilled in this art to make the broad blade in claim one. Now, bimetal blades in the claimed hardness ranges have been known since 1967. Bimetal blades have been used in various ways to improve cutting. People skilled in this art know to use bimetal blades to improve cutting. And claim one only covers a bimetal blade for the intended use of a utility knife. And nothing about that is unobvious. You have the blade in CN-509. It is almost precisely on it, supplemented with a range. And then there's this nebulous definition of small, sharp, retractable. I mean, those are pretty broad terms, even if the applicant wanted them to limit the claim. But really, he can still amend. He could put structure into this claim that's consistent with the specification to really make it clear what structure he's in. This goes to, I think, one of your other points, Judge Schall, about his reliance. He hasn't distinguished from the prior art as to patentability. But if he puts structure in, he may distinguish. And that may fall under the Catalina marketing test of it's a structure in the preamble that he adds. We're almost saying this patentable subject matter in the application. But you don't have to answer that. Your Honor, right on that point, the board reversed the examiner on two sets of claim. When applicant had, and this is on pages 15 to 16 of the record, where the board saw things like notches in the blade that kind of link to a type of utility knife. The board said CN-509 and Anderson don't meet that claim. That's claim five that recites at least one notch formed in the first edge. So he can amend around this prior art and has done so. And the board agreed with him on a couple of instances. Do you think based on that portion of the board's opinion that the board would have taken a different view of the claim one? If claim one had explicitly included utility knife in the body of the claim or if the board had concluded that it was unambiguous that the preamble was part of the claim, claim limitations. I think two responses to that, Your Honor. That the small, sharp, and retractable, as the board showed, because applicant did not submit evidence that CN-509 could not be small, sharp, or retractable. That he then, using that definition, would still run into CN-509. So maybe evidence connecting or dismissing CN-509 on other things could have been submitted with this precise claim. If he amends the claim and includes more structure in the preamble structure, small, sharp, and retractable, as the board said, is not much structure. And that's why the board addressed it in the alternative. They first said not a limitation, only a statement of intended use. And then they said that even if, and that's going to page 15 of the record, the small and retractable is pretty much met by CN-509. Cases such as Schreiber where, you know, if you claim something with features, you do so at a risk that the prior art might still meet it and be shown to meet it. But you could always, and he didn't, submit evidence maybe that could have, you know, rebutted that prima facie case. Thank you, Mr. Piccolo. Thank you. Mr. Reiner has a little more than two minutes of rebuttal time. Yes, thank you. I just want to make a couple of points. The first is that in response to the discussion that even if the preamble was a limitation, it would be obvious, there are a number of limitations recited in the body of the claims that are not found in the cited art. The body of the claim requires that the second metal portion, which is the high speed tool steel cutting edge, extends from the side edge to the side edge, which are the second and third edge of the claim. This isn't present in CN-509. CN-509, if you look, and it's specifically in the figure there, I direct you to page A-730 in the record, has the cutting area only in the middle of the blade. It doesn't extend to the end. And there is a specific reason for this, as made clear in the other patents that are discussed describing this type of blade, is because where the holes are, that's where that blade is bolted into these large machines, and you wouldn't have a blade at that location. Similarly, the claims require that the weld region between the second metal portion, the edge, and the body, also extends from edge to edge, and that's also not present in CN-509. You can see in the dotted line in that figure, it only goes part of the way through. Further, applicants did submit evidence. They did not submit a declaration, but they submitted and discussed at length these other patents which describe the nature of CN-509, and that's the only evidence in the record. The patent office says that there's no limit to the disclosure of CN-509, but it doesn't say that the blade can be any size. It's completely silent, and one of the risks, especially in view of what it would know about these other patents, would not interpret that and understand that to mean any size. In a related context, when it comes to inherency, this court's precedent states that it's only inherent if it's necessarily present. The possibility that it's present, that it could be there, is not sufficient to show inherency. And further, we do reference the utility knife blade in the body of the claim. It says the blade, and that derives its antecedent basis from the parameter which describes the type of blade. And if there's no further questions, I'll see that I'm done. Thank you, Mr. Reiner. The case will be taken under submission.